FILED
RICHARD W. NAGEL
CLERK OF COURT
2025 NOV 13 PM 3:20
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

Charles T Branch, Jr.

Plaintiff

Vs.

Civil Action No. 2:25-cv-1130

Creed Integrated Behavioral Health Services

DBA The Creed of Recovery

Defendant

# OMNIBUS

# ANSWER to CIVIL ACTION and Rule 12(b) MOTIONS TO DISMISS

Now comes defendant, pro se, to answer the above reference civil action and move the court to dismiss the action for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. The defendant is a small rural agency owned and operated by a married couple with five employees, and prays the Court allow business owner, John Entingh, to proceed pro se. Please be advised that Plaintiff filed a charge of discrimination with The U.S. Equal Employment Opportunity Commission alleging the same rights violations that an investigation dismissed. A memorandum in support is below.

John Entingh, pro se

Creed Integrated Behavioral Health Services, LLC

**Memorandum in Support**

## Background

John and Andria Entingh founded Creed Integrated Behavioral Health Services in January of 2018. The business is an addiction and mental health counseling service with a recovery housing component. The Plaintiff came to work for the agency on May 6, 2020 as a case manager who assisted with housing. Because the housing position was a 24/7 on call position, Plaintiff was provided rent free housing in close proximity to the office. By the end of 2020, Plaintiff had obtained a Chemical Dependency Counselor Assistant Preliminary certification from the Ohio Chemical Dependency Professionals Board and came into training to be a substance use counselor. From Early 2021 to mid-2024 Plaintiff worked as a counselor and a house manager. By mid-2024, Plaintiff was not involved in the housing program but continued work as full time as a counselor.

During the course of completing the agency's 2024 taxes, the CPA had the agency complete a worksheet that showed which employees lived in company owned houses and drove company owned cars. On Monday, April 28, 2025, the CPA had a meeting with John and Andria Entingh, Defendant owners, and said according to the worksheets, three employees were being provided with company housing that were no longer working in the housing program and that their rent amount must be reported on their W-2. Because the housing could no longer be lawfully provided free, the existing job description was no longer valid. A new job description had to be signed informing employees that the housing fee would be reported as income on their W-2. There are other aspects to the job description, it includes a state-mandated ethical statement that all service providers must sign before they can provide services. This was all explained to

the Plaintiff who refused to sign the new job description and thereby refused to sign the ethical statement that is part of the job description.

Tuesday came and went, and Plaintiff still had not signed the new job description, but the other two employees did. On Wednesday, the Clinical Director had a meeting with Plaintiff and explained that in order to keep his job, the job description/ job offer had to be signed that day. Come Wednesday morning, May 1, 2025, and with an Intensive Outpatient group coming in at 6:00 pm that evening, a decision had to be made to bring in another counselor. When Plaintiff showed up that day at 1:00 pm, we were surprised. Given the discussion the day before and his still not signing the job offer, it was assumed he did not want the job. A termination letter was drafted that mirrored the April 30th discussion (Exhibit A). Because of Plaintiff's long employment, and with moving costs, he was permitted to negotiate a severance package (Exhibit B). Exhibit B only exists because Plaintiff negotiated it, the agency had every right to not employee a worker who refuses to sign a job offer/description and ethical statement.

Plaintiff was denied unemployment benefits on June 6, 2025 because he was reported as quitting his job and he was still receiving paychecks due to his negotiated severance agreement. His last paycheck was dated June 13, 2025.

On August 12, 2025 Plaintiff filed a formal complaint with the U.S. Equal Employment Opportunity Commission (EEOC) where he alleged retaliation, discrimination, and unequal treatment for the first time (Exhibit C). Exhibit C is a clear illustration of the hostility Plaintiff had towards his employer. He never once voiced anything but praise for his employer during each employee evaluation (See Exhibit D, a staff satisfaction survey). Following their own independent investigation, the EEOC dismissed the complaint, and no appeal was filed.

On September 24, 2025 a hearing was held by the Ohio Unemployment Compensation Review Commission that determined Plaintiff was discharged for just cause (Exhibit E). Plaintiff was directed to the Common Pleas Court to appeal that decision where no appeal was filed.

**Subject Matter Jurisdiction**

Plaintiff fails to raise a constitutional issue and seeks unemployment benefits as relief. The State of Ohio has an Unemployment Compensation Review Commission that is the proper authority for this relief. Indeed, Plaintiff sought relief on the same exact grounds he states in this action and the decision was that Creed Integrated Behavioral Health Services had just cause to terminate Plaintiff for not signing the Job Description (Exhibit C) an incident that cannot remotely be considered "Extremely Serious" (See; Faragher v. Boca Raton, 524 US 775(1998)).

**Personal Jurisdiction**

Plaintiff presents no new evidence in this matter than what was presented to the Unemployment Compensation Review Commission who informed Plaintiff his appeal would be to the Court of Common Pleas. Plaintiff must appeal the decision that he was rightfully terminated, and not retaliation, before he can get to any civil rights claim and give this Court jurisdiction. (Univ. of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013))

**Improper Venue**

Plaintiff presents no new evidence in this matter than what was presented to the Unemployment Compensation Review Commission and the who informed Plaintiff his appeal would be to the Court of Common Pleas. Plaintiff has yet to exhaust state remedies. The U.S. EEOC concluded no rights had been violated.

**Failure to State a Claim Upon Which Relief Can be Granted**

1. Defendant employees eight persons and does not meet the standard set in 42U.S.C 200e et seq. Plaintiff perjured his complaint to gain federal jurisdiction.
2. Plaintiff voluntarily left his housing and accepted a monetary reward for doing so.
3. None of the complaints about the work environment were made until after Plaintiff was denied unemployment benefits.
4. The Defendant never operated under the color of law.

In the case at hand, the Plaintiff got everything he wanted at the time of severance and was completely happy. It was not until he attempted to get unemployment benefits six weeks later that his complaints arose. In spite of all this, we offered to connect Plaintiff with an employer closer to his parent's home where he prefers to live, and plaintiff refused that offer.

Whereby, Defendant prays the Court dismiss this case for the reasons stated above.

Respectfully Submitted,

____________________________

John Entingh, pro se

**Certificate of Service**

I hereby certify that a true and accurate copy of the above OMNIBUS ANSWER to CIVIL ACTION and Rule 12(b) MOTIONS TO DISMISS and Exhibits was forwarded by Certified U.S. Mail to Charles T Branch, Jr. at 260 Hubbard Road, Galloway, Ohio 43119 this 11th day of November, 2025.

Respectfully Submitted

____________________________

John Entingh

# Termination Letter

John Entingh
Director of Outpatient Services
Creed Integrated Behavioral Health Services, LLC
P.O. Box 243
Sugar Grove, Ohio 43155

May 1, 2025

Charles Timothy Branch II
260 Hubbard Road
Galloway, Ohio 43119

Dear Mr. Branch,

We brought it to your attention on April 28, 2025 that we did not have an accurate job position/ description for your position. Of chief concern was the $7,200 a year housing fee you are receiving has not been reported as income. The job position you had that made you eligible to be excluded from the tax burden on this income had been eliminated over two years ago.

As this job position had been eliminated, I created a job offer that mirrors exactly what you have been earning except it stipulates the housing fee would be reported as income. The offer stipulated $18.00 an hour in direct deposit payroll, and the current housing cost of $8,400 a year, which breaks down to $4.20 an hour. This is a combined income of $22.40 an hour or $44,800 annually. And as you know, we do semi annual employee reviews which opens the door for further wage increases.

Unfortunately, you refused the job offer and this left us no option but to fill the position. Because your living arrangement was part of your employment, when you refused the job offer, you also refused the housing option. We need this property vacated by May 5, 2025 or will be forced to move into eviction proceedings, the expense of which will be your responsibility.

Yours sincerely,

John Entingh

Exhibit A

# Creed Integrated Behavioral Health Services, LLC

P.O. Box 243
Sugar Grove, Ohio 43155
PH: (614) 404-6008
email: thecreedofrecovery@icloud.com
Website: https://thecreedofrecovery.com/

Redetermination Unit
Ohio Dept. Of Job and Family Services
PO Box 182292
Columbus, Ohio 43218

RE: UI Account Number 1708898000

Dear Redetermination Unit,

Please be advised Mr. Branch tendered a resignation letter and ***negotiated*** a severance package on April 30, 2025 which was the last day he worked. Mr. Branch received his last full paycheck pursuant to his negotiated separation on June 13, 2025.

Should you have any questions or require any further documentation, please do hesitate to contact us as designated above.

Respectfully submitted,

[signature] 7-14- 2025

John Entingh, LISW, LICDC
Director of Outpatient Services



# Resignation Letter

Charles Timothy Branch II
260 Hubbard Road
Galloway, Ohio 43119

April 30, 2025

Andria Entingh
Creed Integrated Behavioral Health Services, LLC
P.O. Box 243
Sugar Grove, Ohio 43155

Dear Andria,

I regret to inform you that I hereby tender my employment resignation at Creed Integrated Behavioral Health Services, LLC (DBA The Creed of Recovery) effective April 30, 2025.

Furthermore, I hereby accept a severance package contingent upon my vacating the premises at 1511/1513 East Main Street, Lancaster, Ohio 43130. The agreement is that I will have all my property and personal possessions off the property no later than 11:00 PM on Monay, May 5, 2025 in exchange for full salaried paychecks on May 2nd, 2025, May 16th, 2025, May 30th, 2025, and June 13th, 2025.

If I have not fully vacated the property as described above by May 6th, 2025, this severance package deal is null and void and I understand I will not receive any further funds or monies from Creed.

Please understand that I started work at Creed as an entry level care management specialist and have learned a great deal in the last five years about the helping profession and how I fit into the field. This has been an experience that can never be replaced and will certainly enhance all my future endeavors.

My decision to move forward is not because I am unhappy with the opportunities Creed has presented me, my decision is a strategic career move. Creed is still a relatively new organization that offers limited benefits and wages. I need comprehensive health care and a competitive wage.

If there is anything I can do in aiding a smooth transition of responsibilities, please let me know.

Yours sincerely,

[signature]

Charles Timothy Branch II

Exhibit B

EEOC CLEVFO
Rec'd - 8/12/2025



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

EEOC Form 5A (August 2023)

For Official Use Only – Charge Number: 532-2025-04360

| | |
|---|---|
| **Personal Information** | First Name: Charles MI: T Last Name: Branch, Jr<br>Address: 260 Hubbard Rd Apt.:<br>City: Galloway County: Franklin State: OH Zip Code: 43119<br>Phone: (614) 620-4306 Home ☐ Work ☐ Cell ☒ Email: c.tim.branch@gmail.com |
| **Who do you think discriminated against you?** | Employer ☒ Union ☐ Employment Agency ☐ Other Organization ☐ + Creed House Inc<br>Organization Name: Creed Integrated Behavioral Health Services<br>Address: 551½ E. Main St Suite:<br>City: Lancaster State: OH Zip Code: 43130 Phone: (614) 404-6008 |
| **Why you think you were discriminated against?** | Race ☒ Color ☒ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Pregnancy ☐<br>Disability ☒ Genetic Information ☐ Retaliation ☒ Other ☐ *(specify)* |
| the only black male staff · ongoing microaggressions · correspondence<br>**What happened to you that you think was discriminatory?**<br>· because no outside influence<br>· with no formal documentation provided | **Date of most recent job action you think was discriminatory:** 5/1/2025<br>**Also describe briefly each job action you think was discriminatory and when it happened (estimate).**<br>On 5/1/2025, I was constructively discharged in retaliation for not signing vague job offer + housing agreement<br>False + accusatory statements in unemployment correspondence circa 5/15/2025 (unprofessional remarks as well) ←<br>Denied (never offered) standard work phone (on-going)<br>Performance concerns linked to Lymes' Disease disregarded 4/30/2025<br>Withholding clock-in data for 5/1/2025<br>Drafted resignation letter in my name (dated circa 4/30)<br>Lower pay than staff I trained that was explained as tardiness |
| | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures. |
| **Signature and Verification** | I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br>**I declare under penalty of perjury that the above is true and correct.**<br>**Signature:** [signature] **Date:** 8/1/2025 |

Exbit C

---

## Unemployment and Retaliation

- In communications with unemployment, my employer claimed I had **another job lined up**, which is false.
- I am currently **seeking unemployment** and had no secured job when I was pushed to resign.
- This statement appears intended to **sabotage my eligibility** and constitutes another act of **retaliation**.
- It is a **disrespectful jab at the working people of Ohio**, and shows a disturbing willingness to manipulate records for financial and reputational gain.

---

## Unprofessional Language from Leadership

The Clinical Director, a licensed counselor, made the following statement:
"_ met in a girl in California that had putting ideas in his head about how we had been abusing him and he could get more money from us."

This is highly unprofessional for several reasons:

- It adopts a **defensive and accusatory tone**, suggesting the organization felt **threatened by my knowledge** and efforts to advocate for myself.
- The use of "**we**" and "**us**" shows a **collective bias** and reveals that leadership did not view me impartially.
- The quote itself implies I was being **manipulated**, which infantilizes my decision-making and **disrespects my autonomy**.
- No investigation into any claims was conducted — instead, I was vilified through **gossip and projection**.

This might seem quite contrived, but this statement is a display of my understanding and ability to apply the **aspects of counseling to minute details** — a necessary skill in working with clients who struggle with mental health and substance use disorders.

---

## Professional Insight as a CDCA & LCDC-II

- My ability to recognize these retaliatory patterns and subtle admissions of guilt is directly tied to my training and clinical experience.
- As a CDCA and briefly an LCDC-II, I was trained to identify **psychological projection, deflection, and manipulation** — all of which are evident in the employer's communications.
- I include these insights not as personal grievances, but to **demonstrate my professionalism, growth, and the unjust circumstances** that led to my constructive discharge.
- My clinical lens compels me to **report abuse and identify retaliatory behaviors**, even when the abuser is my employer.

---

## Discrimination and Unequal Treatment

- I was **never offered a work phone**, while other office and administrative staff received one — despite my role requiring significant communication.
- I was **paid less than a staff member I personally trained**, based on alleged tardiness. However, **no formal documentation or progressive discipline** was provided to explain or justify this disparity.

C

- I was late only on **February 27**, was early the next day, and later signed a document in March stating that my pay would decrease — despite no subsequent tardiness. When I questioned this document, the Clinical Director instructed me to return it to him, assuring me he would "take care of it." I took a photo of it before doing so.
- My Lyme disease diagnosis was **dismissed or ignored** as a contributing factor to any performance concerns in the April 30th conversation. .

---

## Request for Documentation

I respectfully request that the EEOC compel my former employer to produce:

- My official timecard/clock-in **records** for **May 1.**
- A full explanation of the discrepancies between the April 30 resignation claim and the May 1 termination document.

I will also provide a **review of the director's file** with clearly noted discrepancies, to be submitted as supporting evidence to this claim.

---

I declare under penalty of perjury that the above is true and correct.

Signature: ____________________
Date: ____________________



# Appendix A: Applicable Federal Statutes and Legal Frameworks Supporting the EEOC Complaint of Charles T. Branch, Jr.

This appendix outlines the federal legal protections relevant to the allegations described in my formal EEOC complaint. These statutes provide the framework under which the following actions by my former employer are unlawful:

---

## 1. Title VII of the Civil Rights Act of 1964

- **Citation:** 42 U.S.C. § 2000e et seq.
- **Relevance:**
  - Protects employees against discrimination based on race, color, religion, sex, or national origin.
  - Prohibits retaliation for protected activity, including refusing discriminatory treatment, complaining internally, or participating in investigations.
- **Application to My Case:**
  - I experienced racialized commentary and behavior, including inappropriate political targeting and microaggressions (e.g., racialized references to clothing).
  - I was retaliated against for not agreeing to vague job offers and housing agreements that may have violated tax law, and for asserting boundaries regarding work expectations and communication.

---

## 2. Americans with Disabilities Act (ADA)

- **Citation:** 42 U.S.C. § 12101 et seq.
- **Relevance:**
  - Requires employers to make reasonable accommodations for known disabilities.
  - Prohibits discrimination against qualified individuals based on a medical condition.
- **Application to My Case:**
  - My Lyme disease, which is a qualifying disability under ADA, was dismissed and not factored into performance concerns.
  - The lack of accommodation and punitive response to symptoms related to Lyme disease may constitute an ADA violation.

## 3. Equal Pay Act of 1963

- **Citation:** 29 U.S.C. § 206(d)
- **Relevance:**
  - Prohibits wage discrimination based on sex for substantially equal work.
- **Application to My Case:**
  - I was paid less than other staff members, including those I trained, without documented justification. While this is traditionally gender-based, the principle applies to unjustified wage disparities—particularly where no formal documentation of tardiness or demotion existed.

---

## 4. Constructive Discharge Doctrine

- **Legal Basis:** Supported under federal civil rights case law as a form of adverse employment action,



- **Relevance:**
  - Occurs when working conditions become so intolerable that a reasonable person would feel compelled to resign.
- **Application to My Case:**
  - I was denied access to clock-in systems on my final day, ignored via all formal communication channels, subjected to false statements to government agencies, and pressured through vague offers and housing arrangements.
  - I was never offered standard tools (e.g., work phone) provided to other staff and faced increasingly hostile conditions until I felt compelled to resign under duress.

---

## 5. Whistleblower Protections / False Claims Act

- **Citation:** 31 U.S.C. § 3729 et seq. (False Claims Act); 26 U.S.C. § 7623 (IRS Whistleblower Law)
- **Relevance:**
  - Protects individuals who refuse to participate in fraudulent conduct, including false financial filings and tax violations.
- **Application to My Case:**
  - I refused to sign a vague job and housing agreement that I later learned might have misrepresented taxable benefits (housing) to the IRS.
  - Retaliation that followed may fall under whistleblower protection statutes.

---

## 6. Retaliation Clauses in All Relevant Statutes

- **Relevance:**
  - Each of the above laws contains provisions explicitly prohibiting retaliation against employees who assert their rights or engage in protected activity.
- **Application to My Case:**
  - Retaliatory behavior included false information being submitted to the unemployment office, exclusion from standard office resources, accusatory communications, and the withholding of my final clock-in access.

This appendix is submitted as supporting documentation for the legal basis of my EEOC charge. A separate review of the Director's file and identified discrepancies has also been included to provide further evidence of inconsistent treatment, procedural violations, and discriminatory/retaliatory conduct.

**Respectfully submitted,**
**Charles T. Branch, Jr.**
**Date 8/1/2025**
**Attachments:**



# Staff Satisfaction Survey & Feedback

Name: Charles Branch  Date: 8/6/2024

Position(s): Counselor

**This survey will be used to improve our workforce, overall agency and client care.**

| Training/Orientation | Poor | Fair | Good | Excellent |
|---|---|---|---|---|
| Clear job description for you position | | | X | |
| Availability of supervisor to answer any questions & assist you in your job duties | | | | X |
| Training materials/opportunities to perform you job duties | | | | X |

| Supervision/ Co-workers | Poor | Fair | Good | Excellent |
|---|---|---|---|---|
| Communication by your supervisor on your job performance | | | X | |
| Supervisor makes good use of my skills and abilities | | | | X |
| Staff works as a team | | | X | X |
| Overall Staff Communication | | | X | |

What is the most difficult/challenging part of your job?

Understanding Motivational Interviewing w/ new comers

What type of training would you like to see Creed provide?

Conversation Tactics

Exhibit D

What is working the best for you overall in you job duties?

Building macro systems, further understanding

How can we improve staff communication?

Continue communication, it'll improve


Docket No: C-2025012567



State of Ohio
Unemployment Compensation Review Commission
P.O. Box 182299
Columbus, Ohio 43218-2299

## DECISION

Exhibit E

**In re claim of:**
Charles T Branch - Appellant

**Employer:**
Creed Integrated Behavioral Health Services
UCO No.: 1708898000-0000

Director:
Ohio Department of Job and Family Services

**CASE HISTORY**

The claimant, Charles T Branch, filed an Application for Determination of Benefit Rights which the Director allowed with a benefit year beginning April 27, 2025.

On June 6, 2025, the Director issued a Determination of Benefits holding claimant quit Creed Integrated Behavioral Health Services without just cause. It was held no benefits will be payable until claimant obtains employment subject to an unemployment compensation law, works six weeks, earns $2,028.00 and is otherwise eligible.

Claimant filed an appeal to the Determination of Benefits.

On July 10, 2025, the Director issued a Redetermination dismissing the appeal as not timely filed.

On July 28, 2025, claimant filed a timely appeal to the Redetermination.

On July 28, 2025, the Ohio Department of Job and Family Services transferred jurisdiction of the matter to the Unemployment Compensation Review Commission.

On August 13, 2025, a hearing was held by telephone before a hearing officer. Claimant appeared. Creed Integrated Behavioral Health Services did not appear.

On August 14, 2025, the hearing officer issued a Decision affirming the Redetermination and dismissing claimant's appeal as not timely filed.

On August 14, 2025, claimant filed a timely Request for Review to the hearing officer decision.

The Unemployment Compensation allowed the request for review and directed that a further hearing on the merits be held, for and on their behalf by a hearing officer.

On September 24, 2025, a hearing was held by telephone before Hearing Officer Joseph Blaker on behalf of the Unemployment Compensation Review Commission. Claimant appeared. Creed Integrated Behavioral Health Services was represented by John Entingh, Executive Director.

## FINDINGS OF FACT

Claimant received six separate determinations on June 6, 2025, some favorable and some unfavorable. He was confused about the contradictory decisions and reached out to the Ohio Department of Job and Family Services for assistance. He did not receive clarity with respect to the decisions until July 2, 2025, when he was directed to file an appeal to the decision on his separation.

Claimant began employment with Integrated Behavioral Health Services on or about March 8, 2020. Claimant last served as a care management specialist for the employer. The employer provides mental and behavioral health services to clients. Claimant reported to John Entingh, Executive Director.

Claimant last earned a wage of $18.00 per hour. In addition to the hourly wage, claimant lived at a unit owned by the employer. The unit was close to the facility so that claimant could report to the facility if needed. Claimant was not charged rent by the employer. Claimant was one of three employees with that arrangement.

In 2025, an accountant informed the employer that they needed to assign a monetary value to the ren-free unit and record that value on each employee's W2. Claimant and the other two employee were presented with a written agreement in late April 2025, which listed their hourly rate plus a rate for the lodging. Claimant's agreement stated he would be performing the same duties at $18.00 per hour, plus a wage of $4.20 per hour, which was being assigned to the lodging. Claimant asked for a raise of $6.00 per hour as he had recently obtained a new certification and was informed the employer was not willing to entertain a raise due to concerns regarding his attendance and concerns about inattentiveness at work and the quality of his documentation. Specifically on April 30, 2025, claimant was informed he needed to sign the new agreement to continue to provide direct services to clients and that the employer would have to go in a different direction if he did not sign the form. Claimant declined to sign the new agreement. The other two employees signed their new agreements.

On May 1, 2025, claimant reported for work and was informed he had been replaced. He was given the option of being terminated or resigning and receiving severance pay and opted to resign.

## ISSUE I

Did claimant file a timely appeal to the Determination of Benefits?

## LAW

An interested party may file an appeal to a determination. This appeal must be filed within twenty-one (21) calendar days after the determination is sent to the party, or the determination becomes final. The date of mailing provided by the director on the determination is sufficient evidence to conclude that the determination was sent on that date.

Appeals may be filed with the director, commission, with an employee of another state or federal agency charged with the duty of accepting claims, or with the unemployment insurance commission of Canada.

An appeal, to be timely, must be received within the specified appeal period. If the United States Postal Service is used as the means of delivery, the enclosing envelope must have a

postmark date or postal meter postmark that is on or before the last day of the appeal period. If the postmark is illegible or missing, the appeal is timely filed if received by the end of the fifth calendar day following the last day of the appeal period. 4141.281 (A)(D)(1) O.R.C.

REASONING

Claimant filed a timely appeal to the Determination of Benefits and the Review Commission obtains jurisdiction over the merits of the appeal.

ISSUE II

Was claimant discharged by Creed Integrated Behavioral Health Services with just cause in connection with work?

LAW

An individual is not eligible for benefits if the individual was discharged for just cause in connection with work. The individual will remain ineligible until the individual obtains another job covered by an unemployment compensation law, works six weeks, and earns at least $2,028.00. 4141.01 (D) (2) (a) and 4141.29 (G) O.R.C.

REASONING

The facts fail to establish claimant quit employment. The employer was the moving party in this case as they informed claimant on April 30, 2025, that they would be going in a different direction if he did not sign his new compensation agreement and then informed claimant he had been replaced when he reported for work on May 1, 2025. The issue before the Review Commission is whether claimant was discharged with or without just cause in connection with work.

In this matter, the employer had just cause in connection with work to discharge the claimant based on his refusal to sign the new compensation agreement. The employer was not materially changing claimant's job and was only assigning a monetary value to the residence claimant had been living in rent-free. Claimant was specifically informed he could not provide counseling services without signing the new agreement and refused to sign said agreement without a raise, which the employer was not amenable to. Claimant had a reasonable alternative to losing his job in this matter and his refusal to sign the new compensation agreement, represented fault on his part. It is held claimant was discharged by Creed Integrated Behavioral Health Services with just cause in connection with work.

DECISION

The Hearing Officer's Decision issued August 14, 2025, is modified.

Claimant filed a timely appeal to the Determination of Benefits and the Unemployment Compensation Review Commission obtains jurisdiction over the merits of the appeal.

Claimant was discharged by Creed Integrated Behavioral Health Services with just cause in connection with work. No benefits will be payable until claimant obtains employment subject to an unemployment compensation law, works six weeks, earns $2,028.00 and is otherwise eligible.

This decision rules only on the issue(s) set forth above.

OJI Determination #: 241750117

*[RCX Temp: BOARD BODY]*

Unemployment Compensation Review Commission

Gregory Gantt, Chairman
Ed Good, Vice-Chairman
J David Goodman, Member

**APPEAL RIGHTS**

This decision was mailed on : October 08, 2025

An appeal from this decision may be filed to the Court of Common Pleas of the county where the appellant, if an employee, is resident or was last employed or of the county where the appellant, if an employer, is resident or has the principal place of business in this state, within thirty (30) days from the date of mailing of this decision, as set forth in Section 4141.282, Revised Code of Ohio. The appellant must name all interested parties as appellees in the notice of appeal, including the Director of the Department of Job and Family Services.

If your appeal is filed more than thirty (30) days from the date of mailing, then you may ask the Court of Common Pleas to determine the timeliness of your appeal. The court may find the appeal to be timely if you did not receive this decision within thirty (30) days after it was mailed to you. For more information refer to the booklet Worker's Guide to Unemployment Compensation (JFS-55213), available from Ohio Department of Job and Family Services or visit the agency's website at https://unemployment.ohio.gov.



This is the final decision of the Review Commission, and will remain final if not appealed within the time limit described above.

This decision was sent to the following:

Charles T. Branch - Interested Party
260 HUBBARD RD
GALLOWAY, OH 43119-8710
Via Email

Charles T. Branch - Interested Party
260 HUBBARD RD
GALLOWAY, OH 43119-8710
Via Email

Creed Integrated Behavioral Health Services - Interested Party
551 1/2 E MAIN ST
LANCASTER, OH 43130-3809

Creed Integrated Behavioral Health Services - Interested Party
PO Box 243
Sugar Grove, OH 43155-0243

Director - Interested Party
Ohio Department of Job Family Services
30 E. Broad Street, 32nd Floor
Columbus, Ohio 43215

Creed Integrated Behavioral Health Services, LLC
P.O. Box 243
Sugar Grove, Ohio 43155
(614) 404-6008

**Resolution of the Members of Creed Integrated Behavioral Health Services, LLC to allow Minority Owner John Entingh to Respond to Federal Civil Action 2:225-c-v-1130.**

Pursuant to the Operating Agreement of Creed Integrated Behavioral Health Services, LLC, an LLC organized under the laws of the State of Ohio, the undersigned, constituting all the members of this LLC, do hereby unanimously resolve and consent in lieu of formal meeting to the following actions:

1. Creed Integrated Behavioral Health Services, LLC has been named in a Federal Action by former employee Charles T Branch Jr.

2. Creed Integrated Behavioral Health Services, LLC shall appoint minority owner to answer the complaint and request a dismissal of a frivolous claim.

All members hereby waive notice and meeting with regard to the above actions. This resolution shall have the same force and effect as a vote of the LLC members.

_______________________________ 11/10/2025
Andria D. Entingh — Date
Managing Member
Creed Integrated Behavioral Health Services, LLC

_______________________________ 11-10-2025
John Entingh — Date
Member